1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KINGSLEY LAJOHN WRIGHT,<br><br>  Plaintiff,<br><br>  v.<br><br>MEDICAL MENTAL PRISON REFORM GROUP, et al.,<br><br>  Defendants. | Case No. CV 11-6260-DDP (JEM)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

On August 8, 2011, Kingsley LaJohn Wright ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 28 U.S.C. § 1983 ("Complaint").

On September 1, 2011, the Court issued a Memorandum and Order Dismissing Complaint With Leave to Amend.

On September 16, 2011, Plaintiff filed a First Amended Complaint ("FAC").

**SCREENING STANDARDS**

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3)

seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

> A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

> Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level," Twombly, 550 U.S. at 555, or the merely possible or conceivable. Id. at 557, 570.

> Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, ___U.S. ___, 129 S. Ct. 1937, 1949 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

1  In a pro se civil rights case, the complaint must be construed liberally to afford
2 plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621,
3 623 (9th Cir. 1988). Before dismissing a pro se civil rights complaint for failure to state a
4 claim, the plaintiff should be given a statement of the complaint's deficiencies and an
5 opportunity to cure. Id. Only if it is absolutely clear that the deficiencies cannot be cured by
6 amendment should the complaint be dismissed without leave to amend. Id. at 623; see also
7 Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

8  After careful review and consideration of the FAC under the relevant standards and
9 for the reasons discussed below, the Court finds that the FAC should be **DISMISSED WITH**
10 **LEAVE TO AMEND.**

## PLAINTIFF'S ALLEGATIONS

12  Plaintiff alleges that, on January 11, 2011, he was transferred to the California State
13 Prison-Los Angeles County ("CSP-LAC"), a facility "out of [his] security level." (FAC at
14 5(B).) Due to prison overcrowding, he initially was placed in the Administrative Segregation
15 Unit ("ASU") until bed space became available, where he "had to be subjected to the 'harsh'
16 realm of that placement." (Id.) Plaintiff filed an administrative grievance complaining about
17 his transfer to CSP-LAC and placement in the ASU. (Id.) In February 2011, Plaintiff was
18 placed in a cell on a Level IV yard, even though he was a Level III inmate. (Id.) Plaintiff
19 was placed in a cell with a "disturbed inmate and the cell was 'red flagged' meaning that the
20 inmate has caused problems in the cell (fires, flooding, contraband) and he was a 'lifer'
21 never getting out." (Id.) On May 16, 2011, Plaintiff was sexually assaulted by his cellmate.
22 (Id.) Plaintiff claims that Defendants Cash, Williams, and Franklin knew the prison was
23 overcrowded, and put Plaintiff's life at risk by placing him in a cell with a higher security
24 inmate. (Id. at 5(C).)

25  Plaintiff alleges that after the assault, he was taken to a rape crisis center outside the
26 institution for the gathering of evidence. (FAC at 5(B).) Upon his return to CSP-LAC, he
27 was sent to the medical clinic for a mental and physical evaluation. (Id.) He was then
28 returned to the ASU for safety reasons. (FAC at 5(C).) He appeared before the

classification committee on May 26, 2011. (Id.) The committee, headed by Defendant Wofford, decided to retain Plaintiff in the ASU and refer his case to the classification staff representative for a thirty day review. Plaintiff claims that he remains in the ASU as of September 8, 2011, but he does not indicate whether there has been further administrative review of his placement. (Id.) Plaintiff also alleges that should have been placed in a mental health program where he could be "monitored and receive medication." (Id.)

Plaintiff also claims that he is "a very religious man" and "was denied the right to religion." (FAC at 5(C).)

Plaintiff names the following Defendants: Warden Brenda Cash; the California Department of Corrections and Rehabilitation; Chief Deputy Warden C. Wofford; Correctional Captain D.J. Williams; Correctional Sergeant R. Franklin; Associate Warden C. Ynson; and Inmate Appeals Coordinator R. Thomas.

## DISCUSSION

Having reviewed the Complaint pursuant to the standards set forth above, the Court has determined that Plaintiff's claims do not withstand screening for the following reasons:

**I.      Plaintiff Has Failed to State a Claim for Damages Against the California Department of Corrections and Rehabilitation**

Plaintiff cannot state a claim for damages against the CDCR. The CDCR is an agency of the State of California. States, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 64-66 (1989).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed." See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court. See BV Engineering v. Univ. of Cal., Los

1  Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988).  Moreover, Congress has not abrogated
2  State sovereign immunity against suits under 42 U.S.C. § 1983.  Accordingly, Plaintiff has
3  failed to state a cognizable claim for money damages against the CDCR.

**II.     Plaintiff Has Failed to State a Claim Based on Failure to Protect**

Plaintiff claims that Defendants violated his constitutional rights by failing to protect him from an assault by another inmate.  (Complaint at 5-6.)

Prison officials are required to take reasonable measures to guarantee the safety of inmates and officials have a duty to protect prisoners from violence at the hands of other prisoners.  Farmer v. Brennan, 511 U.S. 825, 832–33 (1994).  However, an inmate has no constitutional right to enjoy a particular security classification or housing.  See Meachum v. Fano, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); see also Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007). To state a claim for threats to safety or failure to protect, an inmate must allege facts to show that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks.  Farmer, 511 U.S. at 834.  To allege deliberate indifference adequately, a plaintiff must set forth facts demonstrating that a defendant knew of, but disregarded, an excessive risk to inmate safety.  Farmer, 511 U.S. at 837.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference."  Id. at 837.

Plaintiff states that, due to overcrowding in the prison system, he was sent to a prison outside of his security classification (CSP-LAC).  After initially being placed in the ASU, about which he filed a grievance, Plaintiff was assigned to a yard with a higher security classification and housed in a cell with a "disturbed inmate," who sexually assaulted Plaintiff.  (FAC at 5(B).)  Plaintiff claims that Defendants Cash, Williams, and Franklin knew generally that the prison was overcrowded and that harm "could come to the Plaintiff" by placing him outside his security classification score.  (FAC at 5(C).)  Plaintiff also alleges that his cell

was "'red flagged,' meaning that the inmate has caused problems in the cell (fires, flooding, contraband) and he was a 'lifer' never getting out." (Id. at 5(B).)

There are no facts alleged demonstrating that these Defendants knew of and ignored a particular risk to Plaintiff. It is not incumbent on Plaintiff to show that Defendants knew with "moral certainty" that Plaintiff was going to be attacked "at a given place at a certain time," but "he must have more than a mere suspicion that an attack will occur. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (internal quotations and citations omitted); see also Farmer, 511 U.S. at 843 (prison official may not escape liability by showing that he did not know that the plaintiff was likely to be assaulted by the specific prisoner who eventually committed the assault). To impose liability on Defendants, Plaintiff must allege facts demonstrating that Defendant were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." Farmer, 511 U.S. at 837. Plaintiff has not done so here. Plaintiff's allegations are insufficient to state a claim for failure to protect.

**III. Plaintiff Has Failed to State a Due Process Claim Based on His Placement and Retention in Administrative Segregation**

Plaintiff appears to allege that his placement and retention in the ASU violated due process.

The Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law." U.S. Const. Amend. XIV. The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. See Wolff v. McDonnell, 418 U.S. 539, 557–58 (1974); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Sandin v. Conner, 515 U.S. 472, 483-84, 487 (1995). Protectible liberty interests arise from the Fourteenth Amendment's Due Process Clause itself or from state laws or regulations deemed to have created a liberty interest cognizable as a civil right. Meachum, 427 U.S. at 224-27; Wolff, 418 U.S. at 557-58. The Ninth Circuit has held that the "Constitution provides no liberty interest to be free from [administrative segregation]." Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993). Thus,

6

1  Plaintiff must state sufficient factual allegations to create a plausible inference that
2  Defendants deprived him of a state-created liberty interest.

3  Changes in a prisoner's conditions of confinement can amount to a deprivation of a
4  state-created liberty interest constitutionally protected under the Due Process Clause, but
5  only if the liberty interest in question is one of real substance. Sandin, 515 U.S. at 477-78.
6  A prisoner possesses such a liberty interest "when a change occurs in confinement that
7  imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of
8  prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin, 515 U.S.
9  at 484); see also Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). The threshold
10 inquiry, accordingly, is whether the conditions of Plaintiff's confinement in the ASU imposed
11 an "atypical and significant hardship" implicating a protected liberty interest. If a sufficiently
12 substantial liberty interest is at stake, the question then is whether the process received
13 comported with minimum procedural due process requirements. See, e.g., Wilkinson, 545
14 U.S. at 224.

15 In Sandin, the Supreme Court found there were three factors to consider when
16 determining whether disciplinary segregation imposes an atypical and significant hardship:
17 "(1) disciplinary segregation was essentially the same as discretionary forms of segregation;
18 (2) a comparison between the plaintiff's confinement and conditions in the general
19 population showed that the plaintiff suffered no 'major disruption in his environment'; and (3)
20 the length of the plaintiff's sentence was not affected." Resnick, 213 F.3d at 448 (quoting
21 Sandin, 515 U.S. at 486–87); see also Jackson, 353 F.3d at 755. Here, Plaintiff has failed
22 to allege any facts demonstrating that the conditions in the ASU imposed an atypical and
23 significant hardship on Plaintiff in relation to the ordinary incidents of prison life.

24 Even if Plaintiff could establish a liberty interest in remaining free from placement in
25 the ASU, he still must allege facts demonstrating that he did not receive due process. See
26 Wilkinson, 545 U.S. at 223–224. When a prisoner is placed in administrative segregation,
27 due process requires that prison officials: (1) conduct an informal nonadversarial review of
28 the evidence justifying the decision to segregate the prisoner within a reasonable time of

placing the prisoner in administrative segregation; (2) provide the prisoner with some notice of the charges before the review; and (3) give the prisoner an opportunity to present his views. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986) (abrogated in part on other grounds by Sandin, 515 U.S. 472). The prisoner is not entitled to a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Id. at 1100-01. If a prisoner is to be retained in administrative segregation, officials must periodically review the initial placement. Id. at 1101; see also Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (review of administrative segregation every 120 days satisfied due process).

Plaintiff has failed to set forth evidence demonstrating that he did not receive the due process required for placement and retention in the ASU. Plaintiff acknowledges that his initial placement in the ASU on January 11, 2011, terminated when he was transferred to the general population in February 2011. He alleges no facts demonstrating a lack of appropriate notice or opportunity to present his views, and the placement was of such short duration that due process did not require further review. See Toussaint, 926 F.2d at 803. As to Plaintiff's subsequent placement and retention in the ASU, Plaintiff appeared before the classification committee on May 26, 2011, no more than ten days after his placement there. Plaintiff again alleges no facts demonstrating a lack of proper notice or review of his ASU placement at this hearing. He also alleges no facts demonstrating a failure by officials to review the initial placement periodically. Id. Accordingly, Plaintiff has failed to state a due process claim based on his assignment to the ASU.

**IV.     Plaintiff Has Failed to State a First Amendment Free Exercise Claim**

"Inmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). To prevail on a First Amendment free-exercise-of-religion claim, a plaintiff must show that a defendant burdened the practice of the plaintiff's religion by preventing him from engaging in a

1  sincerely held religious belief and that the defendant did so without any justification
2  reasonably related to legitimate penological interests. Shakur v. Schriro, 514 F.3d 878,
3  884–85 (9th Cir. 2008). Regulations that impinge on the First Amendment right to free
4  exercise may be upheld only if they are reasonably related to legitimate penological
5  interests. Turner v. Safley, 482 U.S. 78, 89. This determination requires analysis of four
6  prongs: (1) there must be a valid, rational connection between the regulation and the
7  legitimate governmental interest; (2) whether there are alternative means of exercising the
8  right that remain open to inmates; (3) the impact accommodation of the right will have on
9  guards and other inmates, and on the allocation of prison resources; and (4) the absence of
10 ready alternatives. Id. at 90.

11      Here, Plaintiff makes a general and conclusory statement that he is "a very religious
12 man," but "was denied the right to religion." (FAC at 5(B).) Plaintiff fails to allege any facts
13 demonstrating that prison officials substantially burdened the practice of Plaintiff's religion
14 by preventing him from engaging in conduct that he sincerely believes is consistent with his
15 faith. Plaintiff also has failed to allege facts demonstrating that the regulations or
16 restrictions on his religious practices are not reasonably related to legitimate penological
17 interests. Thus, Plaintiff has failed to state a First Amendment free exercise claim.

18      To the extent that Plaintiff is attempting to allege any other claims, they are
19 unintelligible.

20                              * * * * * * * * *

21      For the reasons set forth herein, the FAC is **DISMISSED WITH LEAVE TO AMEND**.
22      If Plaintiff desires to pursue this action, he is **ORDERED** to file a Second Amended
23 Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies
24 discussed above. Plaintiff must name separately each individual defendant against whom
25 he brings his claims, identify clearly the factual basis for each of his claims and the
26 particular constitutional violation, and articulate the connection between each named
27 defendant and each claim.
28

If Plaintiff chooses to file a Second Amended Complaint, it should: (1) bear the docket number assigned in this case; (2) be labeled "Second Amended Complaint"; (3); be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the previous complaints or any other pleading, attachment or document. The amended complaint must be legible, organized, comprehensible, and contain sufficient factual detail. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a Second Amended Complaint by the deadline set herein, the Court will recommend that this action be dismissed on the grounds set forth above for failure to prosecute and failure to comply with a Court order.**

DATED: October 6, 2011      /s/ John E. McDermott
                            JOHN E. MCDERMOTT
                            UNITED STATES MAGISTRATE JUDGE